## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| In re: | : | Chapter 7 |
|  | : |  |
| SERVICE PAINTING, INC., | : | Case No. 18-16843 (ELF) |
|  | : |  |
| Debtor | : |  |
|  | : |  |

## **PLAN OF REORGANIZATION**

The Debtor respectfully submits its Plan of Reorganization pursuant to Chapter 11, Title 11 of the United States Bankruptcy Code, in the form annexed hereto and made a part hereof.

Dated:  4/9/19        PROPONENT:        SERVICE PAINTING, INC.


*/s/ Nikitas Garavelas*
Nikitas Garavelas, President

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................... 2
       A.    General Overview ................................................................................ 2
       B.    Definitions ........................................................................................... 2
       C.    Unclassified Claims ............................................................................ 7
             1.    Administrative Expenses and Fees ............................................ 8
             2.    Priority Tax Claims ................................................................... 8
       D.    Classified Claims and Interests .......................................................... 9
             1.    Classes of Secured Claims ........................................................ 9
             2.    Priority Non-Tax Claims .......................................................... 11
             3.    Class of General Unsecured Claims ......................................... 12
             4.    Interest Holders ....................................................................... 13
       E.    Acceptance or Rejection of Plan ....................................................... 13
       F.    Means of Effectuating the Plan ......................................................... 13
             1.    Funding for the Plan ................................................................ 13
             2.    Post-Confirmation Management ............................................... 15
             3.    Disbursing Agent ..................................................................... 15

III.   TREATMENT OF MISCELLANEOUS ITEMS ................................................... 16
       A.    Executory Contracts and Unexpired Leases ...................................... 16
             1.    Assumptions ............................................................................ 16
             2.    Rejections ............................................................................... 16
       B.    Changes in Rates Subject to Regulatory Commission Approval ........... 17
       C.    Retention of Jurisdiction ................................................................... 17
       D.    Procedures for Resolving Contested Claims ...................................... 17
       E.    Notices under the Plan ...................................................................... 18

IV.    EFFECT OF CONFIRMATION OF PLAN ......................................................... 19
       A.    Discharge ......................................................................................... 19
       B.    Revesting of Property in the Debtor .................................................. 19
       C.    Modification of Plan .......................................................................... 19
       D.    Post-Confirmation Conversion/Dismissal ......................................... 20
       E.    Post-Confirmation Quarterly Fees .................................................... 20

# I.

## INTRODUCTION

Service Painting, Inc. is the Debtor in a Chapter 11 bankruptcy case (the "Debtor").  On October 13, 2018 (the "Filing Date"), the Debtor commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code), 11 U.S.C. §101, et seq.  This document is the Chapter 11 plan ("Plan") proposed by the Debtor ("Debtor" and/or "Proponent").  Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Court"), and which is provided to help you understand the Plan.

This is a Reorganization Plan.  In other words, the Debtor seeks to accomplish payments under the Plan by (i) the continued operations of the Debtor's business, (ii) contributions to be made by the Debtor's principal, Nikitas Garavelas, and (iii) any and all funds recovered by the Debtor in the Adversary Proceeding (as defined in the Disclosure Statement).  The percentage dividend to be received by the class of Allowed Unsecured Claims shall be determined based upon total amount of allowed unsecured claims, and the amount of the "new value" contribution in the form of a potential judgment satisfaction as set forth in section III.D.1(b) of the Disclosure Statement.  Distributions to this Class of Creditors shall be made bi-annually in equal installments of $25,000.00, commencing on the Effective Date of the Plan and concluding five (5) years from that date.

The Effective Date of the Plan is the date on which the order of confirmation becomes a Final Order.

## II.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

### B.    Definitions

**Scope of Definitions.**  For purposes of this Plan, except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings assigned to them in this section of the Plan. In all references herein to any parties, persons, entities, or corporations, the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text may require.

1.    **Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 case allowable under Section 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expense of operating the business of the Debtor, any indebtedness or obligation incurred or assumed by the Debtor in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services to the Debtor, all allowances of compensation and reimbursement of expenses, any fees or charges assessed against the estate of any Debtor under Chapter 123, Title 28, of the United States Bankruptcy Code, and the reasonable fees and expenses incurred by the Debtor in connection with the proposal and confirmation of this Plan.

2.    **Allowed** when used as an adjective preceding the words "Claims" or "Equity Interest", shall mean any Claim against or Equity Interests of the Debtor, proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of claim or Equity Interest against such Debtors, or, if no proof of claim or Equity Interest is filed, which has been or hereafter is listed by the Debtor as liquidated in amount and not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed with the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, Local Rules, or as to which any objection has been interposed and such Claim has been allowed in whole or in part by a Final Order.  Unless otherwise specified in the Plan, "Allowed Claim" and "Allowed Equity Interest" shall not, for purposes of computation of distributions under the Plan, include interest on the amount of such Claim or Equity Interest from and after the Petition Date.

3.    **Allowed Administrative Expense** shall mean any Administrative Expense allowed under Section 507(a)(1) of the Bankruptcy Code.

4.    **Allowed Unsecured Claim** shall mean an Unsecured Claim that is or has become an Allowed Claim.

5.    **Bankruptcy Code** shall mean the Bankruptcy Reform Act of 1978, as amended, and as codified in Title 11 of the United States Bankruptcy Code.

6.    **Bankruptcy Court** shall mean the United States Bankruptcy Court for the Eastern District of Pennsylvania having jurisdiction over the Chapter 11 Case and, to the extent of any reference made pursuant to 28 U.S.C. Section 158, the unit of such District Court constituted pursuant to 28 U.S.C. Section 151.

7.    **Bankruptcy Rules** shall mean the rules and forms of practice and procedure in bankruptcy, promulgated under 28 U.S.C. Section 2075 and also referred to as the Federal Rules of Bankruptcy Procedure.

8.    **Business Day** means and refers to any day except Saturday, Sunday, and any other day on which commercial banks in Pennsylvania are authorized by law to close.

9.    **Chapter 11 Case** shall mean a case under Chapter 11 of the Bankruptcy Code in which Service Painting, Inc. is the Debtor.

10.   **Claim** shall mean any right to payment from the Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, or unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  All claims as such term is defined in section 101(5) of the Bankruptcy Code.

12.   **Class** shall mean a grouping of substantially similar Claims or Equity Interests for common treatment thereof pursuant to the terms of this Plan.

13.   **Bankruptcy Code** shall mean Title 11 of the United States Bankruptcy Code, otherwise known as the Bankruptcy Code.

14.   **Confirmation** shall mean the entry of an order by this Court approving the Plan in accordance with the provisions of the Bankruptcy Code.

15.   **Confirmation Hearing** shall mean a hearing conducted before the Bankruptcy Court for the purpose of considering confirmation of the Plan

16.   **Confirmation Order** shall mean an order of the Bankruptcy Court confirming the Plan

4

in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

17.    **Creditor** shall mean any person that has a Claim against the Debtor that arose on or before the Petition Date or a Claim against the Debtor's estate of any kind of specified in section 502(g), 502(h), 502(i) of the Bankruptcy Code.  This includes all persons, corporations, partnerships, or business entities holding claims against the Debtor.

18.    **Debt** means, refers to and shall have the same meaning ascribed to it in Section 101(12) of the Bankruptcy Code.

19.    **Debtor** shall mean Service Painting, Inc.

20.    **Disbursing Agent** shall mean Nikitas Garavelas or any party appointed by and subject to Court approval, which shall effectuate this Plan and hold and distribute consideration to be distributed to holders of Allowed Claims and Allowed Equity Interests pursuant to the provisions of the Plan and Confirmation Order.

21.    **Disclosure Statement** means and refers to the Disclosure Statement filed by the Debtor as required pursuant to Section 1125 <u>et seq.</u> of the Bankruptcy Code.

22.    **Effective Date** shall mean the day on which the Confirmation Order becomes a Final Order.

23.    **Equity Interest Holder** shall mean the holder of an equity interest in the Debtor.

24.    **Equity Interest** shall mean any interest in the Debtor represented by stock, warrants, options, or other rights to purchase any shares of stock in the Debtor.

25.    **Final Order** shall mean an order of the Bankruptcy Court or a court of competent jurisdiction to hear appeals from the Bankruptcy Court which, not having been reversed, modified, or amended, and not being stayed, and the time to appeal from which or to seek

review or rehearing of which having expired, has become final and is in full force and effect.

26.    **Impaired** when used as an adjective preceding the words "Class of Claims" or "Class of Equity Interest", shall mean that the Plan alters the legal, equitable, or contractual rights of the member of that class.

27.    **Person** shall mean an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, or a government or any political subdivision thereof or other entity.

28.    **Petition Date** shall mean October 13, 2018, the date on which the Debtor filed this petition for relief Commencing the Chapter 11 Case.

29.    **Plan** shall mean the Plan of Reorganization filed in these Proceedings, together with any additional modifications and amendments.

30.    **Priority Non-Tax Claim** shall mean a Claim entitled to priority under sections 507(a)(2),(3),(4),(5),(6) or (7) of the Bankruptcy Code, but only to the extent it is entitled to priority in payment under any such subsection.

31.    **Priority Tax Creditor** shall mean a Creditor holding a priority tax claim.

32.    **Priority Tax Claim** shall mean any Claim entitled to priority in payment under section 507(a)(8) of the Bankruptcy Code, but only to the extent it is entitled to priority under such subsection.

33.    **Proceedings** shall mean the Chapter 11 Case of the Debtors.

34.    **Professional Persons** means and refers to all attorneys, accountants, appraisers, consultants, and other professionals retained or to be compensated pursuant to an Order of the Court entered under Sections 327, 328, 330, or 503(b) of the Bankruptcy Code.

35.    **Professional Claim** means and refers to a claim by any and all professionals as provided for in Sections 327, 328, 330 and 503(b) of the Bankruptcy Code.

36.    **Proponent** means the Debtor, Service Painting, Inc.

37.    **Secured Claim** means and refers to a Claim which is secured by a valid lien, security interest, or other interest in property in which the Debtor has an interest which has been perfected properly as required by applicable law, but only to the extent of the value of the Debtor's interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

38.    **Unsecured Claim** shall mean any claim against the Debtor which arose or which is deemed by the Bankruptcy Code to have arisen prior to the Petition Date for such Debtor, and which is not (i) a secured claim pursuant to Section 506 of the Bankruptcy Code, as modified by section 1111(b) of the Bankruptcy Code, or (ii) a Claim entitled to priority under sections 503 or 507 of the Bankruptcy Code.  "Unsecured Claim" shall include all Claims against the Debtor that are not expressly otherwise dealt with in the Plan.

39.    **Other Definitions** a term used and not defined herein but that is defined in the Bankruptcy Code shall have the meaning set forth therein.  The words "herein", "hereof", "hereto", "hereunder", and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Moreover, some terms defined herein are defined in the section in which they are used.

**C.    Unclassified Claims**

Certain types of clams are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically

entitled to specific treatment provided for them in the Bankruptcy Code.   As such, the Debtor has not placed the following clams in a class.  The treatment of these claims is provided below.

## 1.     Administrative Expenses and Fees

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Bankruptcy Code Section 503(b).  Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case.  The Bankruptcy Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

Court Approval of Professional Compensation and Expenses Required:

The Court must approve all professional compensation and expenses.  Each professional person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code shall file an application for allowance of final compensation and reimbursement of expenses not later than ninety (90) days after the Confirmation Date.  Nothing herein shall prohibit each professional person from requesting interim compensation during the course of this case pending Confirmation of this Plan.  No motion or application is required to fix fees payable to the Clerk's Office of the Office of the United States Trustee, as those fees are determined by statute.

## 2.     Priority Tax Claims

Priority tax claims are certain unsecured income, employment, and other taxes described by section 507(a)(8) of the Bankruptcy Code.  Unless the holder of such a section 507(a)(8) priority tax claim agrees otherwise, it must receive the present value of such claim in regular installments [paid with interest as determined by applicable non-bankruptcy law] over a period not exceeding 5 years from the order for relief.

The following chart lists <u>all</u> of the priority tax claims filed in the Debtor's case:

| CREDITOR | PROOF OF CLAIM NO. | CLAIM AMOUNT |
|---|---|---|
| City of Philadelphia/School District of Philadelphia<br>City of Philadelphia – Law Dept. – Tax Unit<br>1401 JFK Blvd. 5th Floor<br>Philadelphia, PA 19102 | 1 | $139.71 |
| TOTAL | | $139.71 |

**D.     Classified Claims and Interests**

**1.     Classes of Secured Claims**

Secured clams are claims secured by liens on property of the estate.  The following chart lists all classes of creditors containing the holders of the Debtor's secured pre-petition clams and their treatment under this Plan:

| CLASS # | DESCRIPTION | INSIDERS Y/N | IMPAIRED Y/N | TREATMENT |
|---|---|---|---|---|
| 1 | Secured Claim of:<br><br>Name = **Citizens Bank**<br><br>Collateral description = all assets of the Debtor as reflected in U.C.C. – 1 Financing Statement attached hereto as Exhibit "C".<br><br>Claimed priority of security int. = first<br><br>Total claim amount = $251,651.89[1]. | N | Y | Payments Begin = Effective Date<br><br>Payment interval = monthly<br><br>Payment amount = $10,000.00<br><br>Interest rate % = contract<br><br>Total payout % = 100%<br><br>Treatment of lien = lien retained until paid in full. |

[1] This is an estimate based upon Debtor's calculation.  Upon receipt of an amended proof of claim filed by Citizens Bank, the Debtor shall amend the Class 1 claim amount accordingly.

| CLASS # | DESCRIPTION | INSIDERS Y/N | IMPAIRED Y/N | TREATMENT |
|---|---|---|---|---|
| 2 | Secured Claim of:<br><br>Name = **Bank of America, N.A.**<br><br>Collateral description = 2014 GMC Sierra; VIN ending in 1388<br><br>Claimed priority of security int. = first<br><br>Total claim amount = $7,405.12. | N | Y | Payments Begin = Effective Date<br><br>Payment interval = monthly<br><br>Payment amount = $627.92<br><br>Interest rate % = contract<br><br>Total payout % = 100%<br><br>Treatment of lien = lien retained until paid in full. |

| CLASS # | DESCRIPTION | INSIDERS Y/N | IMPAIRED Y/N | TREATMENT |
|---|---|---|---|---|
| 3 | Secured Claim of:<br><br>Name = **Wells Fargo Bank, N.A.**<br><br>Collateral description = 2015 Bobcat Skid Steer Loaders; Seral No. ACS713218; Model No. S850<br><br>Claimed priority of security int. = first<br><br>Total claim amount = $16,095.53. | N | Y | Payments Begin = Effective Date<br><br>Payment interval = monthly<br><br>Payment amount = $1,074.13<br><br>Interest rate % = contract<br><br>Total payout % = 100%<br><br>Treatment of lien = lien retained until paid in full. |

2.      **Classes of Priority Unsecured Claims**

Class 4 Claims: Certain priority claims that are referred to in Bankruptcy Code Sections

507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.  These types of claims are

entitled to priority treatment as follows:  The Bankruptcy Code requires that each holder of such a

claim receive cash on the Effective Date equal to the allowed amount of such claim.  However, a

class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as

of the Effective Date, equal to the allowed amount of such claims.

The below chart reflects all priority unsecured claims filed in this case.  **The Debtor**

**intends to object to the amounts and/or classification of each such claim**.

| CLASS # | CREDITOR | PROOF OF CLAIM NO. | CLAIM AMOUNT |
|---|---|---|---|
| 4 | IUPAT<br>c/o Robert M. Bovarnick, Esquire<br>Bovarnick and Associates, LLC<br>One South Broad Street, Suite 1600<br>Philadelphia, PA 19107 | 14 | $348,918.69 |
| 4 | IUPAT Pension Fund<br>c/o Ryan P. McCarthy, Esquire<br>Jennings Sigmond, P.C.<br>1835 Market Street, Suite 2800<br>Philadelphia, PA 19103 | 7 | $29,115.33 |
| 4 | IUPAT Pension Fund<br>c/o Ryan P. McCarthy, Esquire<br>Jennings Sigmond, P.C.<br>1835 Market Street, Suite 2800<br>Philadelphia, PA 19103 | 6 | $46,642.66 |
|  | TOTAL |  | $424,676.68 |

3.    **Classes of General Unsecured Claims**

General unsecured claims are uncollateralized claims not entitled to priority under

Bankruptcy Code Section 507(a). The following chart identifies this Plan's treatment of the classes

containing <u>all</u> of Debtor's general unsecured claims:

| CLASS # | DESCRIPTION | IMPAIRED Y/N | TREATMENT |
|---|---|---|---|
| 5 | **General Unsecured Claims**<br><br>Total amount of general unsecured claims as scheduled and/or filed = $4,411,920.04<br><br>The IUPAT and IUPAT Pension Funds claims comprise $3,966,116.29 of the Total amount of general unsecured claims. As indicated herein, the Debtor intends to object to the IUPAT and IUPAT Pension Funds claims.<br><br>The total amount of allowed general unsecured claims shall be determined upon the resolution of such claim objections. | Y | Begin date = Effective Date.<br><br>Payment interval = bi-annually for a period of five (5) years<br><br>Payment amt = $25,000.00 bi-annually.<br><br>Interest rate % =  0<br><br>Total payout = $250,000, plus any amount recovered by the Debtor in the Adversary Proceeding. Percentage dividend to be determined based upon total amount of allowed unsecured claims, and the amount of the "new value" contribution in the form of a potential judgment satisfaction as set forth in section III.F.1(b) below. |

4.     **Class of Interest Holders**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor. If the Debtor is a corporation, entities holding preferred or common stock in the Debtor are interest holders. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS# | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|--------|-------------|----------------|-----------|
| 6 | Nikitas Garavelas | Y | Retain interest |
| 6 | Christo Garavelas | Y | Shares shall be cancelled; no interest shall be retained |

E.     **Acceptance or Rejection of Plan**

Each impaired class of Creditors with claims against the Debtor's estate shall be entitled to vote separately to accept or reject the Plan. A class of Creditors shall have accepted the Plan if the Plan is accepted by at least two-thirds in the aggregate dollar amount and more than one-half in number of holders of the allowed Claims of such class that have accepted or rejected the Plan. In the event that any impaired class of Creditors or Interest holders shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to request that the Bankruptcy Court confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code.

F.     **Means of Effectuating the Plan**

1.     **Funding for the Plan**

(a)     The Plan will be funded by (i) the continued operations of the Debtor, (ii) contributions to be made by Nikitas Garavelas as follows: (x) a one-time contribution to the Debtor in the amount of $50,000.00 on the Effective Date, and (z) by means of the satisfaction of any judgment entered against him in the action pending in the United States District Court for the

District of Pennsylvania (the "EDPA Action") to determine his joint and several liability with the Debtor to IUPAT ("Shareholder Contribution"), and (iii) any and all funds recovered by the Debtor in the Adversary Proceeding.  See, Debtor's Plan projections attached hereto and made a part hereof as Exhibit "D".

(b)    The Shareholder Contribution referenced above is called a "new value contribution".  Mr. Garavelas is the Debtor's 70% shareholder and as such, he is in class of interests that is junior to all other Classes, including the class 5 unsecured claims.  Since the unsecured classes are not being paid in full under the Plan, the "absolute priority rule" bars Mr. Garavelas from retaining his 70% ownership of the Debtor under the Plan, unless he meets the requirements of the "new value exception".  The new value exception to the absolute priority rule "allows existing equity holders to retain (i.e., buy back) their ownership interests in the reorganized debtor over the objection of any senior dissenting creditor class that is not being paid in full if the equity holder makes a new capital contribution to the debtor that meets certain criteria." In re Haskell Dawes, Inc., 199 B.R. 867, 871 (Bankr. E.D.Pa. 1996).  A Chapter 11 plan proponent calling upon the new value exception has the burden of proving that the equity holder's capital contribution is: (1) "in the form of money or money's worth"; (2) "necessary to the reorganization"; (3) "reasonable equivalent to the value of the interest being retained"; (4) "up front"; and (5) "substantial." Id, 199 B.R. at 872 (citations omitted).

Mr. Garavelas' $50,000.00 contribution will be in the form of cash or cash equivalent paid to the Debtor on the Effective Date; the new value contribution by means of the satisfaction of any judgment entered against him in the EDPA Action will be in the form of cash or cash equivalent paid to IUPAT in an amount to be determined in the EDPA Action.  The contributions are necessary to the reorganization in that the $50,000.00 will increase the percentage dividend paid

to general unsecured creditors and contribution by means of the satisfaction of any judgment entered against him in the EDPA Action shall reduce the priority and unsecured claims asserted by IUPAT, thereby increasing the dividend to be paid to general unsecured creditors.

Mr. Garavelas' $50,000.00 contribution will made on the Effective Date so it "up front". Mr. Garavelas' new value contribution by means of the satisfaction of any judgment entered against him in the EDPA Action will be paid in accordance with any judgment entered in the EDPA Action so it is "up front".

The Debtor asserts that the $50,000.00 contribution is substantial.  Until such time as the EDPA Action is concluded, the Debtor cannot state that the contribution will be substantial.

In addition, based upon the value of the Debtor as reflected in the liquidation analysis set forth in section IV.B. below, the Debtor asserts that Mr. Garavelas' new value contribution satisfies the third factor and represents the reasonable equivalent to the value of the interest being retained.

**2.      Post-confirmation Management**

Nikitas Garavelas shall continue as President of the Debtor and operate the Debtor's business.

**3.      Disbursing Agent**

Nikitas Garavelas shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall not be compensated and shall serve without bond.

## III.

## TREATMENT OF MISCELLANEOUS ITEMS

A.    **Executory Contracts and Unexpired Leases**

    1.    **Assumptions**

The Plan provides that all Executory Contracts and Unexpired Leases, except for those specifically assumed by the Debtor in writing or previously assumed by Court Order, shall be deemed rejected as of the Effective Date.

    2.    **Rejections**

Except as set forth below, on the Effective Date, all executory contracts not assumed shall be deemed to be rejected. The order confirming the Plan shall constitute an order approving the rejection of the lease or contract. If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Disclosure Statement for the specific date.

All proofs of claim with respect to claims arising from said rejection must be filed with the Bankruptcy Court within the earlier of (i) the date set forth for filing claims in any order of the Bankruptcy Court approving such rejection or (ii) thirty (30) days after the Confirmation Date. Any such claims, proofs of which are not filed timely, will be barred forever from assertion.

    a.    **IUPAT - § 1113 of the Bankruptcy Code**

The Debtor made a settlement proposal to IUPAT during the mediation phase of the Adversary Proceeding, which proposal was rejected by IUPAT without counter-proposal. Without waiving any rights in connection with the Adversary Proceeding, the Debtor shall comply with the provisions of § 1113 of the Bankruptcy Code on or before the Effective Date.

16

**B.      Regulatory Commission Approval**

     n/a

**C.      Retention of Jurisdiction.**

     The Court shall retain jurisdiction of this case pursuant to the provisions of Chapter 11 of the Bankruptcy Code, pending the final allowance or disallowance of all Claims affected by the Plan, and to make such orders as are necessary or appropriate to carry out the provisions of this Plan.

     In addition, the Court shall retain jurisdiction to implement the provisions of the Plan in the manner as provided under Section 1142, sub-paragraphs (a) and (b) of the Bankruptcy Code. If the Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter set forth in this section, or if the Debtor or the reorganized debtor elects to bring an action or proceeding in any other forum, then this section shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court, public authority or commission having competent jurisdiction over such matters.

**D.      Procedures for Resolving Contested Claims.**

     The Debtor shall have sixty (60) days subsequent to Confirmation Date to object to the allowance of claims.  The Debtor has reviewed the claims that have been filed.  To date, sixteen (16) proofs of claim have been filed in the Debtor's case.  The Bar Date for filing claims in this case was February 18, 2019, except that governmental units have until April 12, 2019 to file claims.

     The Debtor intends to object to the following claims that have been filed:

| CREDITOR | PROOF OF CLAIM NO. AND CLASSIFICATION | CLAIM AMOUNT |
|---|---|---|
| IUPAT c/o Robert M. Bovarnick, Esquire Bovarnick and Associates, LLC One South Broad Street, Suite 1600 Philadelphia, PA 19107 | 14 Priority Unsecured | $348,918.69 $300,998.56 |
| IUPAT Pension Fund c/o Ryan P. McCarthy, Esquire Jennings Sigmond, P.C. 1835 Market Street, Suite 2800 Philadelphia, PA 19103 | 7 Priority Unsecured | $29,115.33 $348,978.71 |
| IUPAT Pension Fund c/o Ryan P. McCarthy, Esquire Jennings Sigmond, P.C. 1835 Market Street, Suite 2800 Philadelphia, PA 19103 | 6 Priority Unsecured | $46,642.66 $2,891,462.34 |
| TOTAL | | $3,966,116.29 |

The Debtor reserves the right to amend this section to the extent necessary as additional facts become available.  The Debtor further reserves the right to amend its Schedules D, E and F to reflect the amounts it believes are due to creditors identified as "disputed" in the Debtor's Schedules.

With respect to disputed Claims or Interests, the Disbursing Agent will hold in a separate interest bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim or Interest, as listed in the Debtor's schedules or the filed proof(s) of claim.

E.    **Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent

by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the

Debtor's counsel, addressed to:

MAUREEN P. STEADY, ESQUIRE
KURTZMAN | STEADY, LLC
401 S. 2nd Street, Suite 200
Philadelphia, PA 19147

## IV.

## EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

On the Confirmation Date, Debtor will be discharged from any debt that arose before

confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified

in § 1141(d)(1)(A) of the Bankruptcy Code, except that Debtor will not be discharged of any

debt:  (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) of the Bankruptcy if a

timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy

Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).  Likewise, nothing in this Plan shall be

deemed to affect the extent and/or validity of Allowed Secured Claims except as specifically set

forth herein.

**B.    Revesting of Property in the Debtor**

Except as provided elsewhere in the Plan, the Confirmation revests all of the property of

the estate in the Debtor.

**C.    Modification of Plan**

The Debtor may modify the Plan at any time before Confirmation.  However, the Court

may require a new disclosure statement or revoting on the Plan if Debtor modifies the Plan before

Confirmation.

The Debtor may also seek to modify the Plan at any time after confirmation so long as (1) the Plan has not been substantially consummated and (2) the Court authorizes the proposed modification after notice and a hearing. The Debtor further reserves the right to modify the treatment of any Allowed Claims at any time after the Effective Date of the Plan upon the consent of the Creditor whose Allowed Claim treatment is being modified, so long as no other Creditors are materially adversely affected.

**D.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under Section 1112(b), after the Plan is confirmed, if there is a default in performance of the Plan or if cause exists under Section 1112(b). If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.

**E.      Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the office of the United States trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

Dated:  4/9/19         PROPONENT:              SERVICE PAINTING, INC.


                                               */s/ Nikitas Garavelas*
                                               Nikitas Garavelas, President

20